661 So.2d 668 (1995)
Roy Gene BERRY, Plaintiff-Appellee,
v.
RIVER CITY TIMBER and the Travelers Insurance Company, Defendants-Appellants.
No. 27364-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*669 Blanchard, Walker, O'Quin & Roberts by A. Marty Stroud, III, Shreveport, for Appellants.
A. Michael Boggs, Shreveport, for Appellee.
Before SEXTON and HIGHTOWER, JJ., and PRICE, J. Pro Tem.
HIGHTOWER, Judge.
In this worker's compensation action, the employer and insurer appeal a judgment awarding temporary total disability payments until such time as plaintiff's medical condition changes, as well as statutory penalties for asserted arbitrary and capricious termination of medical benefits. Finding that *670 the claimant forfeited his right to continued benefits, we reverse.

FACTS AND PROCEDURAL HISTORY
Prior to September 5, 1986, River City Timber employed Roy Gene Berry to cut, haul, and deliver wood as a subcontractor. While in that employment on that date, plaintiff sustained injuries when a falling tree branch struck him across the side of his body, producing pain in the neck, shoulders, and back. Thereafter, Berry began collecting $200 per week in worker's compensation benefits. During the subsequent six-year period, he sought medical treatment from several physicians in Texas, his home state, and in Louisiana, and also submitted to back surgery in 1991. In late 1992, however, Travelers Insurance Company informed plaintiff that the compensation insurer would no longer pay for out-of-state medical care, thus requiring him to seek attention in Louisiana pursuant to LSA-R.S. 23:1203. Even so, Travelers continued to disburse weekly benefit checks and to defray prescription medication expenses.
Dissatisfied with these circumstances, Berry filed a Disputed Claim for Compensation, professing to be permanently and totally disabled and asserting that defendants arbitrarily terminated medical treatment. Prior to trial, discovery proceedings disclosed that plaintiff had been involved in a collision between his vehicle and an eighteen-wheeler in December 1988, causing significant aggravation of his earlier on-the-job injuries. Inasmuch as Berry had settled his tort claim without obtaining approval from either the insurer or employer, defendants maintained that he had forfeited his right to future compensation. See LSA-R.S. 23:1102.
The hearing officer, almost one year after trial, concluded that Berry remained temporarily and totally disabled and that he should receive appropriate benefits "until his condition changes." Further, she decided, the claimant should continue to obtain treatment from his Texas physicians. As to whether plaintiff forfeited his benefits due to the tort settlement, the hearing officer stated:
The record reflects that the claimant's settlement in tort did not involve the same accident in which Berry was injured while in the course and scope of his employment with defendant. The court finds that the record of the trial supports the finding that claimant sustained essentially different injuries on-the-job and in the subsequent vehicular accident.
Also any aggravation, if any, of claimant's hip injury was very minor at best. Therefore, defendant is not entitled to a credit, and, therefore, claimant did not forfeit his rights in the instant action as a result of the settlement in the motor vehicle accident suit.
Defendants appeal asserting several errors.

DISCUSSION

Aggravation of Work Injuries
Defendants first contend, and we agree, that the hearing officer clearly erred in concluding that the December 1988 motor vehicle accident did not significantly aggravate the work-related injuries sustained in September 1986.[1]
Although lacking any extensive medical data predating the car-truck accident, the record shows that the claimant complained of both neck and back distress after the work injury. Daily pain in the neck, shoulders, and back was reported in a July 1987 visit with Dr. Broadwell. This rheumatologist diagnosed mild degenerative changes in the neck, while further observing that the job incident affected both the lumbar spine and neck. Later that year, to an orthopedic surgeon, Dr. Lewis C. Jones, plaintiff recounted pain in the neck, shoulders, and back. Complaints of this type, as gleaned from the various doctors' notes, had also been presented immediately after the September 1986 accident.
*671 Several doctors treated Berry following the traffic mishap. They all received continued complaints pertaining to the lower back, and most additionally heard reports of neck pain. Yet, save one, none of these physicians knew of the intervening motor vehicle accident. Not oddly then, they attributed plaintiff's entire symptomatology to the work injury.
Claimant did, however, advise Dr. Royce Hill, his family physician in Carthage, Texas, about those injuries sustained in the eighteen-wheeler collision. Dr. Hill's initial office notes indicate that the motor vehicle accident exacerbated both the patient's lumbar pain and his cervical spasm. Later, and rather curiously, the practitioner's records attribute plaintiff's neck pain to the car wreck and the back problems to the job injury. Very importantly, the EMS report and emergency room records reveal that, immediately following the 1988 accident, Berry reported pain in his neck, back, knee, and leg. Indeed, plaintiff himself testified that the collision "upset all my other injuries."
Although factual findings produced below must be afforded great deference on appeal, they should be reversed when clearly wrong in light of the entire record. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 01/14/94), 630 So.2d 706. In the case at hand, we are presented with such an instance of manifest error. This record plainly reveals that the motor vehicle collision exacerbated Berry's earlier work injuries.

Effect of the Tort Settlement
In the fall of 1990, Berry settled his tort claim against the driver of the eighteen-wheeler for $82,000,[2] but failed to inform or seek prior approval from either Travelers or River City. Concerning such matters, LSA-R.S. 23:1102(B) provides:
If a compromise with such third person is made by the employee or his dependents, the employer or insurer shall be liable to the employee or his dependents for any benefits under this Chapter which are in excess of the full amount paid by such third person, only after the employer or the insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim and only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer and insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise. Such reservation shall only apply after the employer or insurer receives a dollar for dollar credit against the full amount paid in compromise, less attorney fees and costs paid by the employee in prosecution of the third party claim. [Emphasis added.]
In order for this provision's notice requirement to be triggered, the employer and compensation carrier must have a cause of action for reimbursement under LSA-R.S. 23:1101, that is, there must exist a corresponding right in the employee to receive compensation as a result of the injuries in question. Hanover Ins. Co. v. Allstate Ins. Co., 554 *672 So.2d 1261 (La.App. 1st Cir.1989), and authorities therein.
Of course, the later aggravation of a work-related injury is regarded as a development of the initial accident, not as an intervening cause. Thus, the subsequent injury is compensable for worker's compensation purposes and obligates the employer to continue paying benefits. Stated otherwise, a second accident occurring away from work is compensable, where the job injury has not previously healed and has rendered the employee susceptible to further aggravating injuries. Id.
As noted above, Berry's initial injuries had not resolved when the motor vehicle collision exacerbated his condition. Thus, Travelers stood responsible to pay further compensation and was entitled to notice of the settlement. As a result, under the clear language of the statute, plaintiff forfeited his right to further benefits after the date of the settlement.[3] See Hanover, supra, and authorities therein. Accordingly, defendants are not obligated to continue such benefits for the subsequently aggravated work injuries.

Degenerative Arthritis of the Hip
Besides the neck and back injuries, Berry's symptoms also included severe degenerative arthritis in his left hip joint. As previously noted, the hearing officer determined that the work accident caused this condition and, also, that the 1988 motor vehicle accident did not meaningfully aggravate the problem. In their third assignment, defendants assert that the administrative authority manifestly erred in concluding that the job incident caused the degenerative disease in the hip. Again, we agree.
Upon Dr. Hill's referral, plaintiff sought treatment for his hip complaints from Dr. Steven Dickhaut, beginning in September 1989. This orthopedist, despite indicating that hip replacement surgery would be required, chose to delay the procedure because medication seemed to alleviate the discomfort. In any event, based on the history provided by the patient that he experienced no pain in the hip joint prior to September 5, 1986, Dr. Dickhaut attributed this problem to the work accident.
The other physicians who treated plaintiff's hip, however, did not reach the same conclusion. Dr. Broadwell observed severe degenerative changes in x-rays of the left hip as early as July 1987. Later that same year, Dr. Jones viewed either large osteophytes or an old posterior lip acetabular fracture in the left hip area. Based on this information and a clinical examination, Dr. Jones concluded that the degenerative disease in the hip predated the September 1986 incident.
Defendants later provided Dr. Gordon Mead, an orthopedic specialist, with all available x-rays and the claimant's entire medical history, including the period before the job injury. Anent the cause of the hip condition, this documentation afforded several revelations. Specifically, during a visit to a physical therapist in August 1986,[4] at least two weeks before the job injury, Berry complained of increased left hip pain which significantly affected his ability to extend that joint. Furthermore, x-rays made in 1988 showed severe advanced degenerative arthritis of the left hip. Additionally, an MRI in 1989 confirmed that finding. After addressing this background and medical framework, Dr. Mead concluded:
From review of the x-rays and records,.... I feel that the degenerative disease in his left hip most likely pre-existed [the work injury].... Since he was apparently not complaining of leff [sic] hip pain immediately following his injury as is evidenced by the fact that he didn't even have any x-rays performed on the left hip would mean to me that the degenerative arthritis in the left hip was not the result of a significant injury to the left hip as of 9/5/86. I feel that he would have had to have had a fracture or some other significant injury September 5th, 1986, for it to have resulted in such severe degenerative arthritis.... [T]herefore, I *673 feel that the left hip arthritic problem would have developed if there had been no job injury 9/5/86.
Dr. Mead, unlike Dr. Dickhaut, knew of Berry's pre-accident complaints of left hip pain and explicitly recognized that the work incident did not necessitate x-rays of this joint. As explained by Dr. Mead, a causal link between the job accident and the claimant's arthritis would have required a significant injury to the hip on September 5, 1986, certainly one demanding x-rays of that area. Thus, with the pertinent facts failing to disclose such events, Berry's degenerative condition began before September 5, 1986, and developed over an extended period of time, in order to reach the severe state shown by the subsequent x-rays.
Compensation benefits are available only for the plaintiff who can establish, by a preponderance of the evidence, a causal relationship between his disability and the work injury. Green v. ConAgra, 26,599 (La.App. 2d Cir. 03/01/95), 651 So.2d 335; Cubley v. Steel Forgings, Inc., 26,507 (La.App. 2d Cir. 01/25/95), 649 So.2d 117. In the present case, the hearing officer manifestly erred in relying on Dr. Dickhaut's conclusions reached without the benefit of Berry's full medical history. Simply put, this record fails to causally relate the degenerative disease in plaintiff's hip with the work accident.

Termination of Medical Benefits
The remaining assignments of error concern the alleged arbitrary termination of medical benefits. Travelers did not, until the fall of 1992, refuse any medical treatment sought by the claimant. As decided herein, after the unauthorized tort settlement in late 1990, Berry forfeited his right to future compensation. Obviously then, defendants did not act arbitrarily and capriciously in refusing to pay benefits they did not owe.

CONCLUSION
Accordingly, for the foregoing reasons, the judgment awarding Berry continued disability benefits and statutory penalties is reversed at claimant's costs.
REVERSED.
NOTES
[1] The hearing officer correctly determined that the motor vehicle accident only minimally, if at all, aggravated claimant's hip problems. Thus, in this section of the opinion, we address only Berry's neck and back injuries, while considering later herein the relation between the on-the-job incident and the degenerative arthritis in the hip.
[2] The date on the pertinent documentation is not entirely legible. Other records, however, reveal that the settlement occurred in late October or early November 1990.
[3] Berry has not attempted to make use of the statutory provisions allowing a claimant in his position to buy back his right to future compensation.
[4] Claimant had been seeing a physical therapist as a result of injuries sustained in a January 1986 automobile accident.