669 So.2d 696 (1996)
Dottie B. JONES, Plaintiff-Appellee
v.
AT & T, Defendant-Appellant.
No. 28059-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1996.
*697 Blanchard, Walker, O'Quin & Roberts by Robert A. Dunkelman, Shreveport, for appellant.
Wallace & Long by William R. Long, Shreveport, for appellee.
Before MARVIN, NORRIS and HIGHTOWER, JJ.
HIGHTOWER, Judge.
AT & T, the employer in this workers' compensation action, appeals an award of benefits based upon the hearing officer's conclusion that a work-related "accident" aggravated the claimant's pre-existing condition. Finding manifest error in that decision, we reverse.

FACTS
Dottie B. Jones, a line employee at AT & T's Shreveport telephone plant, started working for that company in the early 1970's. By 1985, she began experiencing difficulties with pain and discomfort in her shoulder, neck, and upper extremities, as well as numbness in her left hand and arm. These problems gradually worsened over time and *698 even failed to subside during a temporary layoff between April 1991 and March 1992. Jones eventually saw several doctors, including those in her employer's medical department. Consistently, these experts diagnosed some level of degenerative disc disease associated with cervical arthritis.
Despite continuing to experience such increasing problems with her neck and back, Jones returned to AT & T in March 1992.[1] She thereafter worked several assembly line jobs, including the testing of telephones and covering telephone jacks. Finally, while "mashing" parts into circuit boards on August 27, 1993, she again suffered a flare-up of her symptoms. After completing a full shift that day (Friday), she saw a rheumatologist, Dr. Christopher Burda, the succeeding Monday. Subsequently, Jones did not come back to work, having herself decided that her condition now precluded discharging her assigned tasks.
Dr. Burda soon referred her to Dr. Warren Long, a neurological surgeon, who diagnosed cervical spondylosis, i.e., spinal arthritis, and "possible carpal tunnel syndrome." That examination, in September 1993, revealed the patient's overwhelming problem to be the cervical spondylosis with arthritic growths, known as osteophytes, beginning to pinch her nerves and cause pain down the arm. As a result, the next month on October 27, 1993, Dr. Long successfully treated the degenerative disc disease with surgery.
Even so, on January 12, 1994, Jones instituted the present action for worker's compensation benefits, maintaining that she had contracted an "occupational disease due to repetitive activities." By deposition and in various pleadings, she continued that assertion up until the trial of the merits on December 19, 1994. At that proceeding, for the first time, she surprisingly contended she had suffered an on-the-job "accident." Somewhat peculiarly too, the hearing officer made no comment regarding the previously alleged occupational disease, but, instead, found that Jones's assignment to the duty of "mashing" parts onto circuit boards, on her last day,[2] constituted a compensable accident that aggravated her degenerative disc disease. Thus concluding that the resulting pain and stiffness prevented her return to work, the administrative tribunal awarded the employee temporary total disability benefits from August 27, 1993 until whenever her condition changed, and, also, assessed defendant for all medical expenses less those amounts previously paid. This appeal by the employer followed.

DISCUSSION

On-the-Job Accident
AT & T maintains, and we agree, that the hearing officer clearly erred in finding plaintiff suffered a compensable accident while working on August 27, 1993.
In a worker's compensation action, the plaintiff must establish a work-related accident by a preponderance of the evidence. Bruno v. Harbert Intern'l Inc., 593 So.2d 357 (La.1992); Smith v. UNR Home Prod., 607 So.2d 898 (La.App.2d Cir.1992), rev'd on other grounds, 614 So.2d 54 (La.1993). While the worker's testimony alone may be sufficient to discharge that burden, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. Id. Such corroboration, of course, may include medical evidence and the testimony of fellow workers, spouses, or friends. Id. So too, although La.R.S. 23:1021(1) defines "accident" to encompass a weakened condition which collapses due to a precipitous event, that definition does not include a weakened condition which gradually degenerates over time. Thus, in cases such as the matter at hand, the key requirement is that a precipitous *699 event directly produce sudden objective findings of an injury rather than a mere manifestation of a gradual deterioration or progressive degeneration. Rice v. AT & T, 614 So.2d 358 (La.App. 2d Cir.1993).
Prior to trial, Jones maintained in her deposition and pleadings that her inability to work had been caused by an occupational disease brought on by years of work on the assembly line. In particular, her deposition testimony attributed her present medical problems to prior work assignments or a combination thereof, rather than to any single event. She also stated that her symptoms progressively got worse over time until reaching the juncture at which she hurt too much to return to the plant. Very importantly too, the introduced depositions and medical records contain no indication that she ever apprised any of her treating physicians that she suffered a job-related accident.[3] Even more pertinently, Dr. Long did not attribute plaintiff's eventual physical breakdown to any specific episode, stating instead that, while accelerated by the continual strain of the line job, her arthritic condition merely degenerated progressively to its lowest point. Likewise, Dr. James T. Hill, an AT & T physician, confirmed that observation.
On the day of her hearing, plaintiff asserted for the first time that her August 27, 1993 assignment of "mashing" parts into circuit boards constituted a compensable accident that aggravated her pre-existing condition. Although admitting that her neck, shoulder, and arm symptoms had progressively worsened over the years and even bothered her in the usual manner right before beginning her final shift, Jones testified she had been unable to keep up with the assembly line pace and that when she "left there that day [she] was hurting bad." On cross-examination, however, Jones could not indicate a particular incident or point when her aching began during that period, but referred simply to the entire eight-hour interval to answer that she "hurt all the time."
Although factual findings produced below must be afforded great deference on appeal, they should be reversed when clearly wrong in light of the entire record. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 01/14/94), 630 So.2d 706; Berry v. River City Timber, 27,364 (La.App. 2d Cir. 09/27/95), 661 So.2d 668, writ denied, 95-2612 (La. 01/05/96), 666 So.2d 293. The case at hand presents such an instance. When juxtaposed against her prior deposition testimony and the medical evidence, Jones's last minute assertion regarding an on-the-job accident is both suspicious and uncorroborated. Cf. Smith, supra; Rubin v. PPG Industr., Inc., 527 So.2d 1 (La.App. 3d Cir.1988), writ denied, 528 So.2d 155 (La.1988); Melancon v. Mills, 467 So.2d 621 (La.App. 3d Cir.1985). Further, it is difficult to conclude that the record demonstrates anything more than the mere manifestation of a gradual deterioration or progressive degeneration of plaintiff's pre-existing cervical arthritis.
Not only that, even if we assumed arguendo that plaintiff had sufficiently demonstrated an on-the-job accident, she did not prove causation between the alleged event and her disability. Although a pre-existing medical condition will not bar an employee from recovery if the work accident aggravated, accelerated, or combined with the condition to produce the disability, a claimant still must preponderately establish a causal relation between that accident and the disability. Smith v. Morehouse Gen. Hosp., 27,117 (La. App.2d Cir. 06/21/95), 658 So.2d 232; Berry, supra. Here again, plaintiff's testimony is not corroborated by any of the medical evidence. Indeed, inasmuch as she did not report an accident to any of her physicians and only broached the subject with her last-minute change of strategy, the record is devoid of evidence regarding a direct relationship between the disability and the duties encompassed in "mashing" parts. The medical opinions, expressed in depositions, simply relate Jones's physical problems to the aggravation caused by line work generally, rather than by any single event. Thus, upon *700 thorough review, we conclude that the hearing officer additionally erred in finding the requisite proof of causation. Cf. Andrews v. Music Mountain Water Co., 25,634 (La. App.2d Cir. 04/06/94), 637 So.2d 571, writ denied, 94-1190 (La. 06/24/94), 640 So.2d 1356; Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir.1991).

Occupational Disease
Although the hearing officer's award relies on the erroneous conclusion that plaintiff suffered an accident, we have also addressed the question of whether Jones proved her original claim that she suffered from a compensable occupational disease.
Regarding any disability resulting from degenerative disc disease and cervical arthritis, it is clear that the Occupational Disease Statute, see La.R.S. 23:1031.1(B), specifically excludes such ailments from the definition of "occupational disease."[4] Indeed, recognition of this fact may have prompted plaintiff's last-minute, unsuccessful effort to prove that a work "accident" aggravated her condition.
Jones's pleadings, however, also asserted that her disability resulted from yet another (statutorily compensable) ailment, carpal tunnel syndrome. Even so, just as with an employment accident, the claimant who avers an occupational disease bears the burden of proving by a preponderance that the work-related affliction caused the disability. Ford v. Hart Assoc., 605 So.2d 713 (La.App.2d Cir.1992); Austin v. Howard Discount Stores, Inc., 569 So.2d 659 (La. App.2d Cir.1990).
While indicating in his deposition that plaintiff's nerve conduction tests disclosed "quasi" carpal tunnel syndrome more than likely resulting from the repetitive nature of her job, Dr. Long remained convinced that her primary problem involved her arthritic spine. The doctor additionally noted that, while the arm radiculopathy could have been caused by either the disc disease or the carpal tunnel aspect, he remained uncertain as to the actual source. He further indicated that, several months after the disc surgery, the arm symptoms no longer existed and that plaintiff's remaining difficulties related only to her neck. Although continuing to list "possible carpal tunnel syndrome" as part of the diagnosis, Dr. Long, as early as September 1993, found these symptoms to be "certainly not a bona fide problem at the present." In sum, then, claimant produced no evidence preponderantly showing the carpal tunnel syndrome to be incapacitating. Thus, on this record, we find that she failed to prove her disability to be caused by anything other than her non-compensable cervical condition. Cf. Harris v. General Motors, 577 So.2d 1160 (La.App.2d Cir.1991); Ford, supra; Griffin v. South Central Bell, 93-1394 (La.App. 3d Cir. 10/05/94), 645 So.2d 706.

CONCLUSION
For the foregoing reasons, the judgment granting workers' compensation disability and medical benefits is reversed at claimant's costs.
REVERSED.
NOTES
[1] During the rehiring process, a required medical examination revealed the neck and upper back problem, but only resulted in a restriction from being near solder (due to an allergy) and from using an air-powered driver that caused complaints of thumb pain by plaintiff.
[2] At the hearing, plaintiff maintained that her final work day had been the first and only time she performed this duty, even though she failed to reveal this fact in her deposition and seemed to imply otherwise.
[3] The evidence presented to the hearing officer consisted of the live testimony of plaintiff, the depositions of several physicians who had examined and treated her, and related medical and employment records.
[4] La.R.S. 23:1031.1(B) provides:

An occupational disease means only that disease or illness which is due to causes and conditions characteristic of and peculiar to the particular trade, occupation, process, or employment in which the employee is exposed to such disease. Occupational disease shall include injuries due to work-related carpal tunnel syndrome. Degenerative disc disease, spinal stenosis, arthritis of any type, mental illness, and heart-related or perivascular disease are specifically excluded from the classification of an occupational disease for the purpose of this Section.