699 So.2d 1137 (1997)
Gary J. QUALLS, Plaintiff-Appellee,
v.
STONE CONTAINER CORPORATION, Defendant-Appellant.
No. 29794-WCA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 1997.
Rehearing Denied October 23, 1997.
*1139 Gary D. Nunn, Jonesboro, for Defendant-Appellant.
Brittain & Sylvester by Russell L. Sylvester, Natchitoches, for Plaintiff-Appellee.
Before NORRIS, WILLIAMS and CARAWAY, JJ.
CARAWAY, Judge.
Defendant, Stone Container Corporation, appeals the worker's compensation hearing officer's decision that awarded benefits, penalties, and attorney's fees to its former forklift driver, Gary Qualls. Because Mr. Qualls failed to prove that a May 6, 1993 workrelated incident was an "accident" causing "injuries" as those terms are construed under the Worker's Compensation Act, we reverse the award and render judgment for Stone Container.

Facts
Plaintiff's medical history begins with his visit to Dr. William Foust, a general medical practitioner in Jonesboro, who diagnosed Qualls with acute lumbar strain and low back muscle spasms on October 2, 1992. Again, following a telephone conversation with Qualls in late April, 1993, Dr. Foust prescribed medication for the treatment of prostatitis.[1] On May 7, 1993, Qualls reported symptoms of low back pain during urination to Dr. Foust, who examined Qualls and treated him for prostatitis.
The May 7, 1993 medical examination occurred the day after Qualls' forklift collided with a large set of scales at the Stone paper plant. Though Qualls experienced pain and stiffness in his back after work on May 6, he did not report to Dr. Foust or to Stone that the forklift collision caused his back pain. Dr. Foust testified that he never suspected a disc problem, either before or after the May, 1993 incident, because Qualls' "vague low back pain" showed no signs of radiation and was related to urination.
From May, 1993 until March, 1994, Qualls was not disabled from working because of his back problems. In March, 1994, Dr. James Finley, a board certified orthopaedic surgeon, examined Qualls, who reported to Dr. Finley that he had suffered with low back pain for at least one year and that the pain had begun radiating into his left leg, groin and buttock. An x-ray and MRI revealed spondylolisthesis, degenerative changes, and a herniated disc at L4-5. Based on these diagnostic tests, Dr. Finley recommended surgery. According to Dr. Finley, the medical history recorded by his staff specifically stated that Qualls had not suffered any injury.
During his deposition, Dr. Finley responded to the following questions posed by Mr. Qualls' attorney:
Q.... [W]hat is spondylolisthesis?
A. Spondylolisthesis is a condition of the spine, whereby, a thin area of bone in the posterior elements of the spine is either injured by trauma, or does not develop appropriately. The latter is probably the most appropriate supposition in Mr. Qualls' case, but nonetheless, it allows one vertebra to slide forward on another, and they do not remain stacked one on top of the other, in good alignment.
Q. Is this considered a defect of the spine?
A. Yes.
Q. Is a person with this condition more susceptible to back injury than one who does not possess this condition?
A. Yes.
Q. This sliding process of spondylolisthesis, does it occur suddenly, or is it a gradual process?
A. It can occur traumatically, but in this case, this was a case of progressive spondylolisthesis, and occurred over a long period of time.
Q. Isn't it true, that the MRI, which you had performed on Mr. Qualls, revealed that the L4-5 disc was also degenerative?

*1140 A. Yes.
* * * * * *
Q. And isn't it true, that degenerative changes are the result of wear and tear, or micro traumas normally over a period of time?
A. Yes.
Q. Isn't it also true, that heavy physical work, lifting, static work postures, bending and twisting and vibrations, are all physical work factors, associated with an increased risk for back pain?
A. That sounds like a reasonable statement, yes.
Q. Would you feel that Mr. Qualls' job duties as a forklift driver caused micro trauma to his spine and disc?
A. Probably to some degree, yes.
Q. Is generally a degenerative disc, considered to be more susceptible of injury, than one that is not degenerative?
A. That's probably a reasonable statement, yes.
* * * * * *
Q. In your medical opinion, would you feel that Mr. Qualls' job activities, working as a forklift operator, either caused or contributed to the disability, for which he presented to you on March 11, 1994?
A. Not in any specific way, any more than any other process did.
Dr. Timothy Ogden, an orthopaedic surgeon, examined Qualls on May 29, 1994, after Qualls entered the Veteran's Administration hospital for surgery on his back. Dr. Ogden testified that spondylolisthesis can be degenerative or it can be traumatic and that there is no way to determine what caused Qualls' condition. Neither party questioned Dr. Ogden regarding whether Qualls reported an on-the-job accident during Dr. Ogden's exam.
Qualls underwent surgery on his back at the VA Hospital in 1994 and again in 1995. The parties stipulated that the plaintiff became temporarily totally disabled as of March 24, 1994.
In summary, Qualls saw five physicians and underwent two surgeries without the forklift accident being documented in any of the reports of his health care providers. Qualls did not file an accident report with his employer and suffered for at least ten months before he claims to have indicated to Stone that he had a work-related injury. After March, 1994, Qualls applied for payments under a group disability insurance plan by executing a form stating that his injury was not related to his employment. Even when his employer initially denied worker's compensation coverage, Qualls did not elaborate on the specific details of an accident until March, 1995.
At trial, one of Qualls' co-workers testified that she did see the forklift collision. The co-worker, however, could not remember the date or time of the accident and indicated that forklift drivers often ran into the scales. The co-worker did not testify that she became aware, at the time of the incident or at any time thereafter, that the incident had caused Qualls to suffer any pain or injury.

Law
Initially, we note that degenerative disc disease is specifically excluded from the classification of occupational diseases and is not compensable under the Worker's Compensation Act. La. R.S. 23:1031.1. Therefore, the plaintiff's burden was to establish that an "accident" producing "injury" occurred in this instance as those terms have been defined under the Act. La. R.S. 23:1021(1) and (7) and 1031.
Section 1021 of the Act gives the following definitions:
(1) "Accident" means an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
...
(7) "Injury" and "personal injuries" include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom. These terms shall in no case be construed to include any other form of disease or *1141 derangement, however caused or contracted.
In a worker's compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence. While the worker's testimony alone may be sufficient to discharge that burden, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. Such corroboration, of course, may include medical evidence and the testimony of fellow workers, spouses, or friends. The key requirement is that a precipitous event directly produce sudden objective findings of an injury rather than a mere manifestation of a gradual deterioration or progressive degeneration. Jones v. AT & T, 28,059 (La.App.2d Cir. 2/28/96), 669 So.2d 696.
As in all civil cases, the plaintiff in a worker's compensation case must also establish causation by a preponderance of the evidence. Brown v. Manville Forest Products Corp., 565 So.2d 496 (La.App. 2d Cir. 1990). If the evidence leaves the probabilities evenly balanced, or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. Dunckelman v. T. Baker Smith & Sons, 447 So.2d 26 (La. App. 1st Cir.1984). Nevertheless, as further explained in Walton v. Normandy Village Homes Association, Inc., 475 So.2d 320, 324-25 (La.1985):
"... In order for the employee to recover, it must be determined that the employment somehow caused or contributed to the disability, but it is not necessary that the exact cause be found. A claimant's disability is presumed to have resulted from an accident, however, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing either that there is sufficient medical evidence to show there to be a reasonable possibility of causal connection between the accident and the disabling condition, or that the nature of the accident, when combined with the other facts of the case, raises a natural inference through human experience of such a causal connection.
"Preexisting disease or infirmity of the employee does not disqualify a claim if the work-injury aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed. Correlatively, when an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability...."
The standard of appellate review applicable to the hearing officer's findings of fact is the same as applied to district courts, manifest error. When there is a conflict in the testimony, reasonable credibility calls and factual inferences will not be disturbed on appeal. Duncan v. State, Department of Transportation and Development, 556 So.2d 881 (La.App. 2d Cir.1990).

Discussion
Qualls testified that his forklift collided with a stationary object during his job. Qualls finished his regular work day without reporting the accident but went to his physician the next day with complaints of back pain. A co-worker, although unsure of the exact date, corroborated Qualls' testimony regarding the collision. On the basis of this testimony, the hearing officer determined that an accident occurred on May 6, 1993. Even though this court might have reached a different conclusion based on the failure of Qualls to report the accident to his employer or his physicians, we can not conclude that the hearing officer was clearly wrong or manifestly erroneous in believing Qualls' description of the event. Nevertheless, in order *1142 for the collision to be an "accident" as that term is defined in the Act, proof of causation linking the collision with objective findings of an injury is required.
Bearing in mind that causation is also a factual inquiry, we have thoroughly reviewed the entire record for any medical evidence demonstrating that the May 6, 1993 accident caused "violence to the physical structure of the body" or, in this case, the ruptured disc that led to Qualls' disability. The nature of Qualls' back condition, described by Dr. Finley as "degenerative," coupled with the many months between Qualls' first report of back pain to Dr. Foust in 1992, the May, 1993 collision, and the diagnosis first made by Dr. Finley in 1994, make this a difficult case in which to prove causation without sufficient medical testimony.
The medical experts never adequately addressed the possibility that the forklift collision might have caused this injury. The medical testimony centered instead upon the degenerative nature of the injury and the role that repetitive "micro traumas" and vibrations from the forklift might have played in aggravating Qualls' condition. Although such "micro traumas," as discussed in the medical testimony quoted above, may have been characteristic of the work conditions Qualls had experienced for many years as a forklift driver, the legislature has now specifically excluded from the Act back injuries caused by gradual deterioration, progressive degeneration, and degenerative disc disease making the cumulation of such micro traumas non-compensable. From the medical testimony, plaintiff did not carry his difficult burden of distinguishing between a gradual deterioration to disability and a greater injury or aggravation of a pre-existing degenerative back condition.
Likewise, we reject Qualls' assertion that he is entitled to the presumption that the accident caused disability because his symptoms appeared immediately after the accident. See, Walton v. Normandy Village Homes Association, Inc., supra. Eight days prior to the forklift collision, Qualls reported low back pain, thought to be related to a prostate problem, and he received a prescription for antibiotics from Dr. Foust. After the accident, Qualls continued with a similar course of treatment for prostatitis without reporting any different pain symptoms brought on by the collision. Similar symptoms appeared before the May 6, 1993 collision, and continued through August 1993. The pain, which could possibly be associated with either prostatitis or the degenerative spondylolisthesis, existed from October, 1992 through August, 1993, and the testimony revealed no line of demarcation demonstrating a change in Qualls' condition which would presumptively point to the May 6, 1993 accident as a traumatic and precipitous event.
On this record, it is impossible to determine whether the May 6, 1993 accident caused Qualls injuries by aggravating a preexisting weakened condition or whether Qualls' disability was simply the result of a degenerative process. Unless the claimant proves by a preponderance of the evidence that his disability results from an on-the-job injury, he may not recover.

Conclusion
The hearing officer's determination that claimant's disability resulted from an on-thejob accident is manifestly erroneous. The award of temporary total disability benefits, medical reimbursements, and penalties and attorney's fees is reversed and judgment is rendered in favor of defendant, Stone Container Corporation. Costs of this appeal are assessed against plaintiff.
REVERSED AND RENDERED.

APPLICATION FOR REHEARING
Before NORRIS, WILLIAMS, GASKINS, CARAWAY and PEATROSS, JJ.
Rehearing denied.
NOTES
[1] Dr. Foust's testimony was not clear as to whether he had first suspected prostatitis in October, 1992 or had learned of such symptoms during treatment for some of Qualls' other unrelated medical problems in February, 1993 or at some other time prior to the April, 1993 telephone consultation.