SEXTON, Judge Pro Tem.
| Claimant, Mary Mapes, appeals the judgment of the trial court finding that she failed to prove that certain medical copay-ments and costs of treatment were causally related to her work-related injury; and, thus, denied her claim for further medical benefits. For the reasons set forth herein, we affirm.

FACTS

Ms. Mapes was injured on August 5, 1998, while working on the production line at the General Motors plant in Shreveport. Her complaint was an injury to her left arm and hand. GM accepted the claim *478 and paid medicals, including three surgeries, and indemnity benefits to Ms. Mapes for 520 weeks. In 2008, Ms. Mapes filed the current disputed claim form 1008 seeking total disability status, copayments made on additional treatment and further medicals (mostly for pain management and narcotics). Ms. Mapes withdrew her claim for total disability status prior to trial. The dispute concerning the additional medical treatment and copayments centers around Ms. Mapes’ complaints of neck pain and treatment therefor. Her complaints of neck pain are tenuous in time to the work injury; however, she maintains that the third surgery performed because of the work injury was in the shoulder region, which precipitated the complaints of neck pain. GM argues that her current complaints are simply unrelated to the work injury to her left elbow and wrist.
The course of treatment for Ms. Mapes’ work-related injury is as follows. Her initial treatment was with Dr. W.W. Fox, who performed two left ulnar nerve procedures in October 1998. In March 1999, Ms. Mapes ^reported numbness of both hands to Dr. Fox. He ordered nerve conduction studies to be done by Dr. Eric Bicknell, which were negative. Dr. Fox questioned whether there were any objective findings to substantiate Ms. Mapes’ subjective complaints. He recommended she see a psychiatrist and opined that, from an orthopedic standpoint, she could return to work.
Ms. Mapes then saw Dr. John Knight, who performed a third surgery in December 1999. He opined that Ms. Mapes had reached maximum medical improvement (“MMI”) and referred her for a functional capacity examination. On her last visit to Dr. Knight in 2000, Ms. Mapes reported that she only had occasional left arm pain. However, at trial, Ms. Mapes testified that her scars from the surgery performed by Dr. Knight are in the area of the left neck and shoulder and that, following that surgery, she continually experienced neck pain.
Dr. Knight then moved his practice to California and Ms. Mapes saw Dr. Michelle Ritter. Ms. Mapes told Dr. Ritter that the surgery performed by Dr. Knight had not relieved any of her presurgery symptoms. Dr. Ritter referred her back to Dr. Bicknell for more nerve conduction studies, which revealed changes related to the ulnar neuropathy of the left elbow.
Ms. Mapes began treating with Dr. Randall Brewer for pain management in 2005. It is primarily the copayments for treatment with Dr. Brewer and the narcotic medication prescriptions for which Ms. Mapes seeks reimbursement from GM.
In the meantime, however, Ms. Mapes was treated by many different doctors (emergency room visits) for accidents, falls and claims of back |3injuries, abdominal pains and migraines. She also has a history of alcohol and drug abuse. It was during this time that Ms. Mapes first began complaining of neck pain. She presented at various emergency rooms with blackouts, abdominal pains and shoulder pain from allegedly falling in the bathtub and off of her porch. She also complained of numbness and one-sided paralysis, for which the various emergency room physicians found no objective cause. The medical records are voluminous and indicate that many of Ms. Mapes’ complaints were psychiatric in nature, related to hysteria, anxiety and depression. The record reveals that her behavior on at least one emergency room visit was erratic and combative. During one visit to the emergency room, Ms. Mapes demanded that she be given the drug Methadone.
In 2003, Ms. Mapes saw Dr. Acurio, who stated that he was managing her pain for fibromyalgia. In 2005, Dr. Acurio refused *479 to prescribe narcotics to Ms. Mapes and did not recommend further treatment due to negative nerve conduction studies. Ms. Mapes’ primary care physician, Dr. Allen Cox, prescribed Methadone to her in 2005 for chronic pain unrelated to the work injury. Dr. Cox also indicated that Ms. Mapes was bipolar/schizophrenic.
Ms. Mapes treated with Dr. Nunley for back and leg pain in 2008. He performed lumbar surgery in 2008, but noted that her complaints were inconsistent and she was not taking narcotics as prescribed. Also in 2008, she was advised by a gastrointestinal specialist not to take any more narcotics.
^Ultimately, Ms. Mapes saw Dr. Lui in 2009, at which time she was taking 21 different medications. At that time, she did not complain of neck pain and had full range of motion in her neck.
Dr. Gordon Meade examined Ms. Mapes in 2003 and 2008 on behalf of GM. In 2003, Dr. Meade opined that Ms. Mapes had reached MMI regarding the work injury. In 2008, Dr. Meade reported that none of Ms. Mapes’ complaints at that time were related to the work injury. Dr. Meade further opined that Ms. Mapes was very much in need of psychiatric help.
Following trial, as previously stated, the judge found that Ms. Mapes failed to prove that the additional medical copayments and treatment were causally related to the work injury. This appeal ensued.

DISCUSSION

The sole issue on appeal is whether the trial judge was clearly wrong in finding that Ms. Mapes failed to prove by a preponderance of the evidence that the additional copayments and medical treatment by Dr. Brewer were causally related to her 1998 work injury.
An employer is obligated to furnish all necessary medical expenses related to a work injury. La. R.S. 23:1203. A claimant may recover medical expenses that are reasonably necessary for the treatment of a medical condition caused by a work-related accident. City of Shreveport v. Casciola, 43,132 (La.App.2d Cir.3/26/08), 980 So.2d 203. The claimant must prove by a reasonable preponderance of evidence the necessity and relationship of the physician’s treatment to the work injury. Casciola, \ñsupra. If the evidence is evenly balanced or shows only some possibility that a work-related event produced the disability or leaves the question open to speculation or conjecture, then the plaintiff fails to carry the burden of proof. Player v. International Paper Co., 39,254 (La.App.2d Cir.1/28/05), 892 So.2d 781; Millage v. Builder’s Lumber Supply Company, 38,635 (La.App.2d Cir.7/2/04), 877 So.2d 1171, writ denied, 04-1885 (La.10/29/04), 885 So.2d 594.
Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the WCJ. Casciola, supra. Factual findings in workers’ compensation cases are subject to the manifest error standard of appellate review. Koenig v. Christus Schumpert Health System, 44,244 (La.App.2d Cir.5/13/09), 12 So.3d 1037; Casciola, supra. Specifically, the trier of fact’s determinations as to whether the worker’s testimony is credible and whether the worker discharged the burden of proof are factual determinations not to be disturbed upon review unless clearly wrong. Green v. Thompson Home Health, 46,593 (La.App.2d Cir.9/21/11), 73 So.3d 490, writ denied, 11-2460 (La.1/20/12), 78 So.2d 143. The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. If the factual findings are reasonable in light of the record reviewed in its entirety, a *480 reviewing court may not reverse, even though convinced that, had it been sitting as the trier of fact, it would have weighed the evidence differently. Stobart v. State through Department of Trans. & Dev., 617 So.2d 880 (La.1993).
The record in the case sub judice amply supports the trial judge’s finding on causation. The documentary evidence establishes that Ms. Mapes’ initial complaints from the 1998 work injury were to her left arm and hand. It was not until 2005, seven years after her work injury, that Ms. Mapes began to complain of neck pain. The record is replete with intervening accidents and injuries for which Ms. Mapes sought treatment during that time. Some of these intervening accidents included complaints of neck injury. The judge agreed with the physicians’ assessments that there were no objective findings for many of Ms. Mapes’ complaints. Specifically, the trial judge explained:
Further, nothing in Dr. Brewer’s records purports to establish the required causal connection between his treatment and the claimant’s work accident. To the contrary, diagnostic studies of Ms. Mapes’ neck and arm have been largely normal and fail to correlate with her complaints of chronic. and substantial pain. Even if Dr. Brewer suggested that the neck and arm complaints are related to the work accident, the multiplicity of accidents, injuries and treatments since then would make such an opinion speculative at best.
Again, the record reasonably supports the above findings. In addition, a reading of the trial judge’s thorough and well written reasons for judgment indicates that he found Ms. Mapes’ credibility and reliability to be “suspect at best,” and we find no abuse of discretion in that determination. We, therefore, cannot say that the judge was manifestly erroneous in concluding that Ms. Mapes failed to prove that her continued treatment with 17Pr. Brewer for pain management for neck pain was causally related to her 1998 work-related injury to her left arm and wrist.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of General Motors Corporation and denying the claim of Mary Mapes for further medical benefits is affirmed. The costs of appeal are assessed to Ms. Mapes.
AFFIRMED.