GASKINS, J.
 

 |tIn this workers’ compensation case, the hospital/employer appeals from a judgment ordering it to pay wage benefits and medical expenses for surgery, plus penalties and attorney fees, to an employee who allegedly aggravated her preexisting shoulder condition in a work-related accident. We amend the award of penalties and attorney fees. In all other respects, the judgment is affirmed.
 

 FACTS
 

 The claimant, Kristi Koenig, was employed by Christus Schumpert for 22 years. On August 7, 2006, while working as a diagnostic sonographer or ultrasound technologist in the radiology department, she was performing an abdominal ultrasound on a patient when she extended her right arm over the patient’s body. While scanning, she allegedly felt and heard a pop in her right arm and was unable to move her arm. She immediately reported the incident to a radiology nurse, Vickie Mayence, who escorted her to the ER for treatment.
 

 In November 2006, the claimant filed a disputed claim for compensation with the Office of Workers’ Compensation (OWC). She asserted that she had not received any wage benefits but was entitled to them, as well as all reasonable and necessary medical treatments, penalties and attorney fees.
 

 In January 2007, the employer filed an answer in which it denied the occurrence of an on-the-job injury. It contended that the claimant was injured prior to August 7, 2006, and that the prior injury was not job-related. It also maintained that her prior injury was not aggravated by a work-related |2injury. The employer further alleged that prior to her alleged work-related injury, the claimant was already planning to have the surgery she was now requesting under workers’ compensation. In July
 
 *1041
 
 2007, the employer filed an amended answer in which it asserted forfeiture of the claimant’s right to benefits due to false statements under La. R.S. 23:1208.
 

 In August 2007, the claimant filed her first amended disputed claim for compensation with OWC, in which she asserted an occupational disease. In response, the employer filed a general denial.
 

 Trial was held on December 3, 2007. The claimant testified as to the circumstances surrounding her August 2006 work-related accident. She admitted that she had been suffering from shoulder problems prior to this incident. She stated that the onset of these problems was gradual and she believed it was related to the repetition in her work. In July 2006, her orthopedic surgeon, Dr. John Mays, found a tear in her rotator cuff; he wanted to schedule surgery. She testified that when she told her supervisors about the proposed surgery, they asked her to delay it as long as possible, and she agreed. When she saw Dr. Mays after her work-related accident, he refused to let her work without another MRI. Based on the MRI results, he felt she had aggravated her prior problem. After the accident, her shoulder pain was much worse. The claimant explained that when she tried to have her scheduled shoulder surgery moved up, her private insurer refused to pay for it on the basis that her injury was work related. She testified that she has not worked since the incident and that she retired from Schumpert with a severance package in April 2007.
 

 |sOn cross-examination, the claimant testified about prior injuries. According to the claimant, she was injured many times while working in the radiology department because she had to move heavy patients by herself. As required by her job, she reported all of these injuries, including muscle strains; she had a total of 11. These included being hospitalized in traction for a week 10 to 20 years ago. She was also questioned about several Lortab prescriptions given to her by her doctors for back and shoulder pain shortly before the instant injury.
 

 Both sides admitted medical records of the claimant into evidence. The claimant also introduced several depositions, including those of Dr. Mays, Ms. Mayence and Dr. Shane Barton, an orthopedic surgeon who gave a second opinion. Dr. Mays testified that he first saw the claimant in July 2006; she complained of right shoulder pain that had been ongoing for years. He ordered an MRI, which showed a partial tear of the rotator cuff tendon; he recommended surgery. He also saw her the day after her work incident; she had greatly reduced range of motion from her prior visits. He ordered an MRI with contrast; it showed a rotator cuff tear tendinous with a flap tear and impingement. Dr. Mays found her history and complaints credible, and he concluded that it was more likely than not that she suffered an aggravation of a preexisting condition. He opined that this would require more extensive surgery to repair.
 

 Dr. Barton testified that he too found the claimant’s history reliable and consistent with the injury he diagnosed. Based upon his exam and the patient’s history, he believed that she suffered an aggravation of her | longstanding shoulder condition. He agreed that she required surgery. Both doctors testified that since one MRI was with contrast and the other without, they could not compare them and determine if they showed the same tear.
 

 In her deposition, Ms. Mayence testified that she was in the x-ray holding room when the claimant entered crying. Her arm was hanging by her side and she appeared to be in great pain. After dealing with the patient the claimant had been
 
 *1042
 
 scanning, Ms. Mayence accompanied the claimant to the ER.
 

 The claimant also introduced the deposition of Joanne Cannatella, who worked for the third-party administrator of the employer’s workers compensation program. She testified that she felt the claimant’s injury was not compensable because she had previously had this condition and the surgery recommended was the same one she already had scheduled.
 

 Thomas Postles, the clinical supervisor at the radiology department, testified for the employer. He recounted the claimant’s work history and her failure to pass her exam to become a registered ultrasound technician. However, he admitted that being registered was not a mandatory requirement of her job. According to him, he became aware in the summer of 2006 that she was going to have rotator cuff surgery; however, he testified that she wanted to delay the surgery until August 2006 to build up her sick leave. He also stated that he was informed of the claimant’s August 2006 injury by Ms. Mayence on the day it occurred. He described Ms. Mayence as a reliable registered nurse with more than 20 years of experience; she informed him that she did not know what happened but that the claimant |fiapparently injured her shoulder while performing a procedure on a patient and appeared to be in severe pain.
 

 Kathleen Paine, the human resources coordinator for Schumpert, also testified about the claimant’s HR records. Both Mr. Postles and Ms. Paine testified that the claimant resigned from her employment with the hospital.
 

 In a judgment rendered in May 2008, the workers’ compensation judge (WCJ) found that the claimant suffered a work-related injury while in the course and scope of her employment. Specifically, while working as a diagnostic sonographer, she was performing an ultrasound on a patient when she felt a pop in her shoulder which was ultimately diagnosed as a rota-tor cuff tear. The WCJ found that the claimant was credible and that her testimony was consistent with the objective medical evidence. Given the facts that the claimant had worked for the employer for 22 years (the last six years in her current position) and that her job involved awkward manipulations of the patient to obtain optimal images for the ultrasound machine, the WCJ concluded that her current shoulder condition was work related. He also found that she was unable to perform her old job due to the injury. As a result, she was awarded temporary total disability (TTD) benefits of $454 per week retroactive to the date of injury. Also finding that the claimant’s preexisting shoulder condition was exacerbated by the work injury, the WCJ approved the surgery recommended by Dr. Mays and Dr. Barton.
 

 The WCJ also found that the employer was arbitrary and capricious in failing to start wage benefits and failing to approve the recommended surgery. He noted that the employer “turned a blind eye” to the medical [¿reports indicating an injury or an aggravation. Penalties of $8,000 were awarded, as were attorney fees of $15,975. The claimant’s attorney was also granted $3,667.04 for out-of-pocket litigation expenses.
 

 The employer took a suspensive appeal.
 

 OCCURRENCE OF ACCIDENT AND INJURY
 

 Law
 

 An employee is entitled to workers’ compensation benefits if he received personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031(A). An “accident” is defined as “an unexpected or unforeseen actual, iden
 
 *1043
 
 tifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.” La. R.S. 23:1021(1). In a workers’ compensation action, the plaintiff must establish the occurrence of a work-related accident by a preponderance of the evidence.
 
 Thomason v. Wal-Mart Stores, Inc.,
 
 37,520 (La.App. 2d Cir.9/4/03), 852 So.2d 1283,
 
 unit denied,
 
 2003-2774 (La.12/19/03), 861 So.2d 573.
 

 A preexisting medical condition will not bar an employee from recovery if the employee establishes that the work-related accident aggravated, accelerated or combined with the condition to cause the disability for which compensation is claimed.
 
 Peveto v. WHC Contractors,
 
 93-1402 (La.1/14/94), 630 So.2d 689;
 
 Hatfield v. Amethyst Construction, Inc.,
 
 43,588 (La.App. 2d Cir.12/3/08), 999 So.2d 133,
 
 writ denied,
 
 2008-2996 (La.2/13/09), 999 So.2d 1150. The preexisting condition is | presumed to have been aggravated by the accident if the employee proves: (1) the disabling symptoms did not exist before the accident, (2) commencing with the accident, the disabling symptoms appeared and manifested themselves thereafter, and (3) either medical or circumstantial evidence indicates a reasonable possibility of causal connection between the accident and the activation of the disabling condition.
 
 Peveto, supra.
 

 Factual findings in a workers’ compensation case are subject to the manifest error or clearly wrong standard of appellate review.
 
 Player v. International Paper Company,
 
 39,254 (La.App. 2d Cir.1/28/05), 892 So.2d 781. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Stobart v. State through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact to be determined by the hearing officer.
 
 Brien v. Leon Angel Constructors, Inc.,
 
 42,904 (La.App. 2d Cir.3/12/08), 978 So.2d 576,
 
 writ denied,
 
 2008-0802 (La.6/6/08), 983 So.2d 919.
 

 When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own inferences and evaluations are as reasonable.
 
 Rosell v. ESCO,
 
 549 So.2d 840 (La.1989);
 
 Arceneaux v. Domingue,
 
 365 So.2d 1330 (La.1978). Where there are two permissible | Rviews of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Stobart, supra.
 

 Discussion
 

 The employer contends that the claimant’s condition — a torn rotator cuff— was the same after the incident as it was before and thus she did not suffer an aggravation of her already existing condition. It emphasizes her history of shoulder problems prior to the August 2006 incident and the fact that she was already scheduled for shoulder surgery. It also accuses the claimant of being drug seeking and using the August 2006 incident as a pretext to avoid going back to work because she did not want to undergo the process to become a certified sonographer. The employer argues that the great weight of the medical evidence demonstrates that there was no aggravation of a preexisting injury.
 

 
 *1044
 
 The claimant argues that both her treating physician, Dr. Mays, and the employer’s second medical opinion, Dr. Barton, agreed that she suffered an aggravation of a preexisting condition. Furthermore, the claimant testified as to her increased pain and decreased range of motion after the accident. The claimant contends that the WCJ’s decision is supported by the medical evidence and not manifestly erroneous.
 

 Our review of the evidence demonstrates that while the claimant had a preexisting condition for which she required surgery, she was still able to work before August 7, 2006. The claimant — whom the WCJ specifically found to be credible — testified without contradiction that while performing her work as a sonographer, she suddenly experienced great pain and was |9unable to move her arm. Her testimony was corroborated by that of Ms. Mayence, the nurse to whom she immediately reported her distress. After this occurrence, the claimant’s condition was worsened to the point that she was no longer able to perform her job. Both of the doctors agreed that she sustained an aggravation to her preexisting condition.
 

 Based on the evidence in this record, we cannot say that the WCJ was manifestly erroneous in concluding that the claimant proved, by a preponderance of the evidence, that an incident at work aggravated her preexisting condition to the extent that she was no longer able to work.
 

 ENTITLEMENT TO WAGE BENEFITS AND SURGERY
 

 Law
 

 It is a well-settled principle that the provisions of the workers’ compensation scheme should be liberally interpreted in favor of the worker.
 
 Bynum v. Capital City Press, Inc.,
 
 95-1395 (La.7/2/96), 676 So.2d 582.
 

 A claimant is entitled to TTD benefits if she proves by clear and convincing evidence, unaided by any presumption of disability, that she is physically unable to engage in any employment or self-employment. La. R.S. 23:1221(1)(c);
 
 Jones v. Hollywood Casino Shreveport,
 
 42,819 (La.App. 2d Cir.12/5/07), 972 So.2d 1189. A claimant may prove disability through medical and lay testimony. The WCJ must weigh all of the evidence to determine if the claimant has met the burden of proving temporary total disability.
 
 Hatfield v. Amethyst Construction, Inc., supra.
 

 An employer is obligated to furnish all necessary medical expenses related to a work injury. La. R.S. 23:1203. A claimant may recover medical | mexpenses that are reasonably necessary for the treatment of a medical condition caused by a work-related injury.
 
 City of Shreveport v. Casciola,
 
 43,132 (La.App. 2d Cir.3/26/08), 980 So.2d 203. The employee must prove by a reasonable preponderance of the evidence the necessity and relationship of the physician’s treatment to the work-related accident.
 
 Casciola, supra.
 
 A WCJ’s determination with regard to medical necessity is entitled to great weight and will not be disturbed on appeal in the absence of manifest error or unless clearly wrong.
 
 Casciola, supra.
 

 Discussion
 

 The employer claims that the WCJ erred in finding that the claimant was entitled to TTD benefits, medical treatment, and surgery. The claimant, however, asserts that the WCJ was not manifestly erroneous in its awards. As to the surgery, she stressed Dr. Mays’ testimony that she would require more extensive sur
 
 *1045
 
 gery as a result of her work-related accident.
 

 Because the claimant suffered a disabling aggravation of her preexisting condition due to a work-related accident, she is entitled to TTD benefits. The evidence in its totality supports the WCJ’s finding in this regard and that portion of the judgment is affirmed.
 

 However, the issue as to the payment of the claimant’s surgery is slightly more complicated. The claimant was already scheduled to have surgery to repair her preexisting rotator cuff tear, which was to be paid for by her private insurer.
 
 [1]
 
 The medical evidence indicated that the aggravation of |nthe condition would necessitate a more extensive surgery. The doctors could not say definitively whether the aggravation the claimant sustained was a greater tear of the rotator cuff, which was visible on the pre-accident MRI, or the biceps tendon damage which was visible on the post-accident MRI with contrast. However, they agreed that, based on their exams and the claimant’s credible history, she did suffer an aggravation to her condition that prevented her from working and that surgery was necessary. After carefully reviewing the record, especially the medical evidence, we find that the WCJ was not clearly wrong in his decision to require the employer to pay for the claimant’s surgery.
 

 We find no manifest error in the WCJ’s decision to award wage benefits and payment of the costs of the claimant’s surgery. Accordingly, those portions of the judgment are affirmed.
 

 PENALTIES AND ATTORNEY FEES
 

 Law
 

 The employer’s failure to provide payment of compensation or medical benefits owed shall result in the assessment of a penalty and reasonable attorney fees, unless the employer has reasonably controverted the claim. La. R.S. 23:1201(F).
 
 [2]
 
 In order to reasonably controvert a claim, the | ^defendant must have some valid reason or evidence upon which to base the denial of benefits.
 
 Howard v. Holyfield Construction, Inc.,
 
 38,728 (La.App. 2 Cir. 7/14/04), 878 So.2d 875,
 
 writ denied,
 
 2004-2303 (La.1/7/05), 891 So.2d 684. The WCJ has great discretion in awarding or denying penalties and attorney fees.
 
 Brien v. Leon Angel Constructors, Inc., supra.
 

 When an attorney fee is warranted, it must reflect the degree of skill and ability exercised by the attorney, the amount of the claim, the amount recovered for the claimant, and the amount of time
 
 *1046
 
 devoted to the case. In the event of an excessive attorney fee, the court is authorized to lower it to an amount “reasonable under the circumstances.”
 
 Thompson v. The Animal Hospital,
 
 39,154 (La.App. 2d Cir.12/15/04), 889 So.2d 1193.
 

 Discussion
 

 The employer maintains that it had ar-ticulable and objective reasons for denying payment of benefits to the claimant, which reasons were rooted in the medical evidence. As a result, it contends that the trial court erred in assessing penalties. However, should the awarding of penalties be warranted, the employer asserts that the amount awarded was excessive because the most that could be awarded was $2,000 per claim, with a maximum aggregate amount of $8,000 in penalties. Here only two possible claims were detailed, the failure to pay wage benefits and the failure to pay for surgery. As to the propriety of the amount of the penalties, counsel for the claimant conceded at oral argument that he did not address that issue in brief because he could not dispute the employer’s argument.
 

 | ,sThe claimant points to the deposition of Ms. Cannatella, the insurance adjuster who denied the claim, as a basis for imposing penalties. Ms. Cannatella was in receipt of the medical reports of Dr. Mays and Dr. Barton, which described a worsening of the claimant’s condition due to a work injury; however, she still denied the claim on the bases of the preexisting condition and scheduled surgery.
 

 On the issue of imposition of penalties, we find that they are warranted for the employer’s failure to pay wage benefits to the claimant after she plainly suffered an on-the-job accident which prevented her from continuing to perform her job. Because the employer failed to reasonably controvert the claim, an award of $2,000 is warranted for this claim. However, we find that penalties are not warranted as to the payment of the costs of the claimant’s surgery. While it was obvious that the claimant suffered a work-related aggravation of her preexisting condition, the medical evidence was less clear as to its treatment. Since the surgery had already been scheduled and it appeared to be essentially the same procedure, the employer refused to pay for it. We find that under the facts of this case, this action did not rise to the level of failing to reasonably controvert the claim and therefore, no penalties are appropriate for this claim.
 

 As to attorney fees, the employer argues that their imposition was unwarranted and, if warranted, the amount assessed, $15,975, was excessive. The claimant maintains that the award of attorney fees was proper.
 

 An award of reasonable attorney fees is warranted for the employer’s failure to pay wage benefits. However, since the surgery issue was ^reasonably controverted, attorney fees are not warranted for that claim. The trial judge awarded the attorney fees based on the lawyer’s work on the entire case; we amend the attorney fees to only reflect work on the wage claim. Under the circumstances of this case, which includes the lawyer’s work in the instant appeal, we find that a reasonable award of attorney fees is $7,500.
 

 Accordingly, we reduce the award of penalties to $2,000 and the attorney fees to $7,500. The litigation expenses of $3,667.04 are affirmed.
 

 CONCLUSION
 

 The portion of the judgment awarding penalties is amended to reduce that award to $2,000; additionally, attorney fees are reduced to $7,500. In all other respects,
 
 *1047
 
 the judgment is affirmed. Costs are assessed against the appellant.
 

 AMENDED IN PART AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 . We note that La. R.S. 23:1205(C) was not utilized to try to resolve the "Catch 22” situation in which the claimant was ensnared by the private insurer's refusal to pay for the surgery because it deemed the matter to be an employment-related injury covered by workers’ compensation and the employer's refusal to pay on the basis that the surgery was not work related because it was scheduled prior to the work accident.
 

 [2]
 

 . In relevant part, this provision provides:
 

 Failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars.