DREW, J.
 

 | ,In this workers’ compensation proceeding, Lisa Ford obtained relief on some of her claims for penalties and attorney fees. She now appeals the denial of her other claims for penalties and attorney fees, as well as the amount of attorney fees awarded on her successful claims.
 

 FACTS
 

 Lisa Ford was employed as a line leader at a chicken plant operated by House of Raeford (“Raeford”). Her job required her to lift boxes weighing between 40 and 70 pounds.
 

 It is undisputed that Ford was injured at work when she fell down stairs on January 8, 2009. She continued working until March 18, 2009. On March 19, 2009, her physician restricted her from work because of the injury, and Raeford received notice of this restriction. Ford’s attorney wrote to Raeford on April 6, 2009, demanding that it institute workers’ comp benefits. Ford received her first payment of temporary total disability benefits from Raeford, which was self-insured, on April 7, 2009.
 

 Ford sought penalties and attorney fees from Raeford. She alleged that these were due because Raeford: (i) was late in making the initial payment of indemnity benefits; (ii) untimely paid or never paid subsequent indemnity benefits; (iii) failed to provide copies of medical reports from Raeford’s doctor; and (iv) failed to timely authorize additional medical treatments, namely a discogram and a second MRI.
 

 The WCJ found that the initial installment of indemnity benefits was received four days late;
 
 [1]
 
 it assessed a penalty of $200 and awarded an 12attorney fee of $200 for this delinquent payment. The WCJ also assessed a penalty of $200
 
 [2]
 
 and attorney fee of $250 for Raeford’s failure to provide copies of the medical reports. The WCJ denied Ford’s claims for penalties and attorney fees for the denial of medical treatment and the alleged untimely payment or nonpayment of indemnity benefits.
 

 Ford has appealed the denial of penalties and attorney fees as well as the amount of attorney fees that were awarded.
 

 DISCUSSION
 

 Factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review.
 
 Dean v. Southmark Constr.,
 
 2003-1051 (La.7/6/04), 879 So.2d 112;
 
 Banks v. Industrial Roofing & Sheet Metal Works, Inc.,
 
 96-2840 (La.7/1/97), 696 So.2d 551. To reverse a factfinder’s determination under this standárd of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong.
 
 Stobart v. State, Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). Ultimately, the issue
 
 *1161
 
 to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.
 
 Id.
 
 If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even Isthough convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Id.
 
 When there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong.
 
 Winford v. Conerly Corp.,
 
 2004-1278 (La.3/11/05), 897 So.2d 560.
 

 The determination of whether an employer or insurer should be cast with penalties and attorney fees in a workers’ compensation action is essentially a question of fact.
 
 Authement v. Shappert Engineering,
 
 2002-1631 (La.2/25/03), 840 So.2d 1181.
 

 Payment of indemnity benefits
 

 La. R.S. 23:1201(A)(1), which provides for the time and place of payment of compensation benefits, states:
 

 Payments of compensation under this Chapter shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident; however, when the employee is not living at the place where the wages were paid, or is absent therefrom, such payments shall be made by mail, upon the employee giving to the employer a sufficient mailing address. However, a longer interval, not to exceed one month, may be substituted by agreement without approval of the director. An interval of more than one month must be approved by the director.
 

 The WCJ interpreted La. R.S. 23:1201(A) as providing that a claim for penalties for the late payment of indemnity benefits requires proof of the manner in which wages were paid prior to the accident. The WCJ declined to award penalties for the untimely subsequent payments of indemnity benefits because he could not determine the manner in which Ford was paid prior to her injury. Ford argues that the WCJ was manifestly erroneous in denying this claim because Raeford’s payment ledger and compensation |4checks clearly showed the benefits were intended to be paid on a weekly basis.
 

 The WCJ noted lapses in the payment of weekly benefits. A weekly installment was paid on July 28, 2010, then the August 4, 11, and 18 payments were skipped until a lump sum payment covering the prior three weeks was made on August 20, 2010. The next payment was made on September 15, 2010, to cover the period of September,1—14, 2010.
 

 Ford contends that the fact that she had received indemnity benefits on a weekly basis established that she had been paid on a weekly basis when working for Raeford. We disagree. This shows only the normal pattern of indemnity payments. It does not show the manner in which Ford had been paid when she worked for Raeford.
 

 Ford argues that even if she had been paid on monthly basis prior to her injury, she had not received payment for the period of September 28 to October 25, 2009, at the time of the October 2010 trial. The evidence does not show that she was ever paid for that period, despite demand being made by letter from her attorney on October 2 and October 14, 2009, for payment. As such, the WCJ was clearly wrong in failing to assess a penalty and attorney fee for this violation of La. R.S. 23:1201.
 

 La. R.S. 23:1201(F) provides, in part:
 

 Failure to provide payment in accordance with this Section ... shall result in the assessment of a penalty in
 
 *1162
 
 an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars |fiper calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
 

 The statute further states that this subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control. La. R.S. 23:1201(F)(2).
 

 Raeford, which blamed delays on a change in third party administrators, has not shown that the claim for payment of indemnity benefits during the period in question was reasonably controverted or that nonpayment resulted from conditions over which it had no control. Accordingly, we assess a penalty of $2,000 for this violation. Ford is entitled to attorney fees for this violation. The amount of attorney fees will be addressed after other alleged violations of La. R.S. 23:1201 are reviewed on this appeal.
 
 [3]
 

 Denial of medical treatment
 

 Regarding the failure to authorize additional medical treatment, the WCJ concluded that Raeford could have relied on an independent medical examination opinion by Dr. Karl Bilderback to justify its earlier decision not to authorize a disco-gram or initially authorize a second MRI. Therefore, the WCJ concluded that the requests for medical treatment were reasonably controverted, and penalties and attorney fees were denied.
 

 IfiFord contends that the WCJ was manifestly erroneous in not ordering Raeford to pay penalties and attorney fees for terminating medical treatment in October 2009 and for later failing to authorize a disco-gram.
 

 Dr. Douglas Brown, who is board certified in orthopedic medicine, first examined Ford on April 2, 2009. Ford complained of pain in her left lower back going down the back of her left leg. An MRI from March of 2009 showed disc herniation at left L4.
 

 Ford underwent a micro discectomy performed by Dr. Brown on April 20, 2009. The disc herniation was removed and the nerve was decompressed. When Dr. Brown next examined Ford on May 1, 2009, her leg pain was gone.
 

 Ford complained to Dr. Brown on September 8, 2009, that she was experiencing a little pain in the right side of her back, but none in the left side.
 

 When Dr. Brown next treated Ford on October 6, 2009, she related having a little pain at L4. Dr. Brown thought the back pain was being caused by scar tissue. He suggested a new MRI to determine the cause of the pain as he was concerned that something else had happened because she had been doing well and then suddenly started having more pain. Dr. Brown thought it was possible that an earlier functional capacity evaluation of Ford aggravated the scar tissue and caused the pain.
 

 The MRI request was sent to the adjuster on October 12, 2009, and was denied two days later. Dr. Brown’s office notes from that date state that |7the adjuster was not approving the MRI or any other further treatment. Dr. Brown was not
 
 *1163
 
 told why the adjuster was taking that action.
 

 On December 14, 2009, Ford’s attorney wrote to Raeford’s attorney requesting authorization for her to return to Dr. Brown. Ford’s attorney wrote to Raeford’s attorney on January 6, 2010, that Ford was still having significant problems and needed to see Dr. Brown. The MRI was approved on January 7 and performed on January 11, 2010. Ford also returned to Dr. Brown for treatment.
 

 The radiologist who interpreted the January 2010 MRI said Ford had a little bulging remnant at L4 where the surgery had been, but there was no nerve pressure. Ford was also developing arthritic changes in her back, but there was no neurologic deterioration.
 

 Ford complained of tremendous pain to Dr. Brown’s physician assistant on January 18, 2010. Dr. Brown recommended a discogram to diagnose the cause of the pain. He thought that Ford might need a spinal fusion because of her complaints, and he wanted a discogram to verify that she needed the surgery.
 

 Dr. Brown’s physician assistant saw Ford on January 18, 2010, for complaints of recurrent back pain going into the left leg. Neurologically, her exam was normal. After Dr. Brown reviewed her MRI again, he thought that epidural steroid injections would possibly help with the pain.
 

 The request for approval of the disco-gram was made again on February 1, 2010. The adjuster informed Dr. Brown’s office 11 days later |sthat the discogram would not be authorized. When Dr. Brown received the denial, he was offered no explanation.
 

 On February 18, 2010, Ford’s attorney wrote to Raeford’s attorney asking for the basis for the denial of the discogram requested by Dr. Brown.
 

 Epidural steroid injections were approved on March 9, 2010. Ford received epidural steroid injections at L4 on both sides from Dr. Brown on March 20 and April 10, 2010. She seemed to be doing well, and the pain improved after the first series of injections. After the second series of injections, the only pain that Ford had was minor muscle pain. She received injections again on April 23, and she was able to move without pain, only a minor spasm in her back. Dr. Brown wanted her to get into a reconditioning program to get her ready for work.
 

 Dr. Brown noted that Ford had some dense scar tissue from her prior surgery. Dr. Brown stated that the scar tissue was more on the right side, which was where she was having pain, so he tried to break up the scar tissue with the injections. Dr. Brown thought the scarring that he broke up alleviated Ford’s pain.
 

 Dr. Brown last treated Ford on June 29, 2010. He recalled that she was doing well and she agreed that she had recovered and was stable. Ford seemed to him to be at maximum medical improvement. Dr. Brown thought she could work at a light/medium work level with a 25-pound safety limit, and she had a 7.5% whole body impairment.
 

 Ford contends that the WCJ was clearly wrong in not assessing a penalty and attorney fees for Raeford’s termination of medical treatment and |9denial of the second MRI in October of 2009. Ford contends that the termination of medical treatment was in violation of La. R.S. 23:1201(1), which states, in part:
 

 Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of a penalty not to exceed eight thousand
 
 *1164
 
 dollars and a reasonable attorney fee for the prosecution and collection of such claims.
 

 Unreasonably controverting a claim requires action of a less egregious nature than that required for arbitrary and capricious behavior.
 
 Brown v. Texas-LA Cartage, Inc.,
 
 98-1063 (La.12/1/98), 721 So.2d 885. Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.
 
 Id.
 

 There was no justification for Raeford’s decision in October of 2009 to terminate medical treatment and refuse to approve the second MRI. Therefore, the WCJ was clearly wrong in not ordering Raeford to pay penalties and attorney fees for discontinuing medical treatment and delaying the second MRI for three months. A penalty of $1,000 is appropriate in this instance. Ford is also entitled to attorney fees for this violation, and the issue of attorney fees will be addressed later in this opinion.
 

 Ford next contends that the WCJ was clearly wrong in not assessing a penalty and attorney fees for Raeford’s failure to authorize the discogram. The WCJ concluded that the request for the disco-gram was reasonably controverted by Rae-ford because it could have relied on an independent | Tnmedical examination (“IME”) to later justify its decision not to authorize a discogram.
 

 The IME opinion was requested on March 11, 2010, and Dr. Bilderback examined Ford at the end of that month. He noted that Ford had only low back pain, and that all of her leg pain had resolved. Dr. Bilderback noted that the back surgery left Ford with some back pain as well as some numbness in the distribution of her prior leg pain, which was the typical result of a lumbar discectomy. He thought that she was at maximum medical improvement.
 

 Dr. Bilderback could not recommend the lumbar discogram of Ford’s spine because the procedure no longer appeared to be a medically supported test for the evaluation of back pain. He noted that while disco-grams had been used in the past to evaluate patients with low back pain for surgical intervention, studies had recently questioned the use of a discogram as a preoperative indication for spinal fusion.
 

 Dr. Brown admitted that the discogram is a controversial procedure. However, he considered the two local pain management specialists who performed them as achieving reliable results.
 

 As noted earlier, La. R.S. 23:1201(F) provides for the assessment of penalties and attorney fees based on an employer’s failure to provide payment of benefits unless the claim is reasonably controverted or the failure to pay results from conditions over which the employer had no control.
 

 |uIn order to reasonably controvert a claim, the defendant must have some valid reason or evidence upon which to base the denial of benefits.
 
 Koenig v. Christus Schumpert Health System,
 
 44,244 (La.App.2d Cir.5/13/09), 12 So.3d 1037;
 
 Howard v. Holyfield Const., Inc.,
 
 38,728 (La.App.2d Cir.7/14/04), 878 So.2d 875,
 
 writ denied,
 
 2004-2303 (La.1/7/05), 891 So.2d 684.
 

 The crucial inquiry in determining whether to impose penalties and attorney fees on an employer is whether the employer had an articulable and objective reason to deny benefits at the time it took action.
 
 Authement v. Shappert Engineering, supra; Williams v. Rush Masonry, Inc.,
 
 98-2271 (La.6/29/99), 737 So.2d 41.
 

 Here, Raeford denied the discogram and then sought a second medical opinion to justify its decision. Dr. Brown later agreed with Dr. Bilderback that Ford was
 
 *1165
 
 not a candidate for a . diseogram. Dr. Brown ultimately concluded that the disco-gram was unnecessary because the breaking up of the scar tissue by the injections had alleviated her pain. Dr. Brown did not think the failure to have the diseogram affected Ford’s recovery as it is strictly a diagnostic test. It should also be noted that Ford herself did not wish to have a diseogram at the time she was examined by Dr. Bilderback.
 

 A workers’ compensation claimant must prove that the medical expenses are reasonably necessary for the treatment of a medical condition caused by a work-related injury.
 
 Hodge v. Manpower Temporary Services,
 
 45,648 (La.App.2d Cir.9/22/10), 47 So.3d 1148. The disco-gram turned |12out to be unnecessary for the treatment of Ford’s work-related injury. Although Raeford did not possess this information at the time it denied the request for a diseogram, we cannot say the WCJ was clearly wrong in finding that the request had been reasonably controverted.
 

 Attorney fees
 

 Ford urges this court to increase the award ($450) of attorney fees for Raeford’s failure to timely provide medical records in violation of La. R.S. 23:1125
 
 [4]
 
 and for its failure to timely initiate benefits. Ford contends that the amount was abusively low. Ford also seeks an increase in attorney fees for the work performed on this appeal.
 

 Ford was awarded attorney fees of $200 for Raeford’s violation of La. R.S. 23:1201 when it made a delinquent payment of the first installment of indemnity benefits. We amend this award of attorney fees by increasing it to a single award of $2,000 to reflect that Ford prevailed on this appeal regarding two additional claims of violations of La. R.S. 23:1201. We do not disturb the $250 in attorney fees awarded for the failure to timely provide copies of medical records as that award was not manifestly erroneous.
 

 CONCLUSION
 

 The judgment is reversed to assess a penalty of $2,000 for the failure to pay indemnity benefits from September 28 to October 25, 2009. The judgment is also reversed to assess a penalty of $1,000 for the denial of the [ ^second MRI and termination of medical treatment in October of 2009. The award of attorney fees for all the violations of La. R.S. 23:1201 is amended to $2,000. In all other respects, the judgment is affirmed. Raeford is to bear the costs of this appeal.
 

 REVERSED IN PART, AMENDED IN PART, AND, AS AMENDED, AFFIRMED.
 

 [1]
 

 . La. R.S. 23:1201(B) provides that the first installment of compensation payable for temporary total disability benefits shall become due on the 14th day after the employer or insurer has knowledge of the injury.
 

 [2]
 

 . The WCJ’s written reasons for judgment state that the penalty is $250. However, the judgment states that the penalty is $200.
 

 [3]
 

 . La. R.S. 23:1201(J) provides, "Notwithstanding the fact that more than one violation in this Section which provides for an award of attorney fees may be applicable, only one reasonable attorney fee may be awarded against the employer or insurer in connection with any hearing on the merits of any disputed claim filed pursuant to this Section!.]”
 

 [4]
 

 . La. R.S. 23:1125 provides for a penalty of $250, plus reasonable attorney fees for the collection of such penalty, when the employer is late in furnishing the medical report.