Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,255-WCA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

BANNARTA WAGGONER                    Plaintiff-Appellee

versus

MCDONALDS AND LUBA                   Defendants-Appellants
WORKERS COMP

* * * * *

Appealed from the
Office of Workers' Compensation, District 1E
Parish of Morehouse, Louisiana
Trial Court No. 22-04848

Brenza Irving Jones
Workers' Compensation Judge

* * * * *

ANZELMO LAW                          Counsel for Appellants
By: Donald J. Anzelmo
    Alexis N. Coco

PARHMS LAW FIRM, LLC                 Counsel for Appellee
By: Carlton L. Parhms

* * * * *

Before COX, ROBINSON, and MARCOTTE, JJ.

**COX, J.**

This civil appeal arises from the Office of Workers' Compensation District 1E, Ouachita Parish. The Honorable Brenza R. Irving Jones, presiding as the workers' compensation judge ("WCJ"), granted claimant, Bannarta Waggoner ("Waggoner"), temporary total disability benefits from December 20, 2022, until February 28, 2024. It is from this judgment that LUBA Workers' Compensation ("LUBA") and Gilley Enterprises, Inc. ("Gilley") d/b/a McDonald's ("McDonald's") (collectively, "Appellants"), appeal.

For the following reasons, we reverse the WCJ's ruling as it relates to Waggoner's claim for workers' compensation benefits for her right leg and the portion of the judgment which awards Waggoner benefits from December 20, 2022, until February 28, 2024. All other findings not reversed are affirmed.

## FACTS

Waggoner was employed as a shift manager for Gilley Enterprises, Inc., a company that owns and operates McDonald's restaurants throughout Louisiana. On September 15, 2022, Waggoner filed a pro se worker's compensation claim, alleging injuries from an accident that occurred during work hours on September 20, 2021. According to Waggoner, as she passed through the kitchen, a door to one of the restaurant's refrigerators fell on her legs. Waggoner claimed that because she sustained injuries to both legs and knees, she was entitled to continuing medical and indemnity benefits.

Gilley, represented by LUBA, filed an answer, admitting Waggoner was injured during work hours, was paid compensation benefits, and those benefits were continuing. Appellants, however, denied Waggoner was either

permanently or temporarily disabled, or any injury she sustained from the incident at work resulted in a loss of earning capacity. Following several substantial delays related to discovery and deposition scheduling, a hearing on the matter was held April 17, 2024. The WCJ provided that all parties previously stipulated that Waggoner's accident occurred within the course and scope of her employment and that she earned an average weekly wage of $604.42, with a compensation rate of $402.06. The WCJ also outlined the following issues presented before it: the nature and extent of Waggoner's injury or disability; Waggoner's entitlement to additional workers' compensation benefits; and Waggoner's entitlement to additional medical treatment.

Thereafter, Waggoner testified that she started employment with McDonald's in 2014 or 2015 as a shift manager, where she performed a wide range of duties on various shifts, earning approximately $14 dollars an hour. In describing the accident, Waggoner stated that on September 20, 2021, as she walked from the kitchen to the front of the restaurant, a door to one of the medium-sized commercial refrigerators fell on her. Waggoner specified that when the door fell, it hit her knee first and then landed on the bottom portion of her leg. Waggoner testified that the refrigerator door falling off had been a recurring problem, and another employee had also been injured from it two weeks prior to her own injury.

Waggoner explained that after the door fell on her, she finished her shift, then reported to the emergency room at Morehouse General Hospital ("Morehouse General"), where she received a CAT scan, x-rays, and a shot to numb her pain. Waggoner stated that following her visit to the emergency room, she later went to Morehouse Community Health Center ("Morehouse

2

Community") for further treatment and was referred to Dr. Douglas Brown ("Dr. Brown"), who prescribed her pain medication and recommended a brace for her knee. She stated that on February 13, 2023, she sought additional treatment from Dr. Timothy Spires ("Dr. Spires") and then with Dr. Richard Ballard ("Dr. Ballard"), who gave her injections for pain in both knees. She further explained that Dr. Ballard eventually took her off work because of the severity of her pain, opining that she would have to have surgery on her knee; however, she did not specify which knee Dr. Ballard wanted to operate on.

In describing the condition of her knees, Waggoner testified she could barely perform housework but could still "perform her duties but [sic] can't complete them" like she used to. Waggoner stated that since the accident, she has experienced more pain in her left knee than her right knee, and while she experienced swelling in her knees prior to the injury, swelling occurs more often because of it. Waggoner expressed her desire to work but stated she is unable to stand or walk for extended periods of time without being in pain and must sit or rest to recover.

On cross-examination, Waggoner admitted that on a prior occasion, she filed for workers' compensation, having claimed that a ladder hit her back while she was still employed with McDonald's. Waggoner claimed she was offered money either as a settlement or to resign from the position. Regarding the current accident, Waggoner then reiterated that when the refrigerator door fell, it hit her knees and then landed on her lower legs. Waggoner then read a statement from her deposition, in which she was asked to describe where the door fell on her, and stated, "I can't recall because it hit. When it hit, it just-my knee started hurting more than it was

3

hurting. My calf definitely was hurting, so it seemed like it was broke, was hurting so bad, and it still hurts."

Waggoner then identified records from Morehouse General from September 21, 2021, which provided, "Patient states pain/injury to left lower leg. Patient states she works at McDonald's and a small refrigerator door came off the hinges, falling on her left lower leg. Patient has a small bruised area to left lower leg. Denies any other injuries." Waggoner explained she told staff both her knees and legs were hurt, but the staff only seemed concerned with her left leg. Waggoner further stated that when she explained that she hurt her legs, she meant the term to broadly include her knees as well but failed to tell staff that the door hit her knees. Waggoner also admitted that the treating doctor documented, "The patient presents with tenderness. The complaints affect the left shin[.]"

Waggoner testified that after her initial visit at Morehouse General, she did not immediately return to work, she received workers' compensation benefits during this time, and Dr. Brown released her to return to work; however, she stopped seeking treatment from him because she was still in pain, under stress, and did not like the atmosphere of the facility where his office was located.

After the introduction of medical records from September 22, 2021, from Morehouse Community, Waggoner acknowledged that the report provided, "Left lower leg pain times three days after freezer door fell on it at work. Patient states works at McDonald's in Bastrop, Louisiana. And when arrived at work, a freezer door fell on the left leg. Patient states completed her shift and went to MGH ER for treatment and underwent x-ray. Patient

4

states will file on [workmen's] comp. Patient admits to history of lymphedema bilaterally."

Records from Morehouse Community dated September 29, 2021, were then introduced into evidence and Waggoner acknowledged that the records provided "Chief complaint, leg pain, follow up from work accident," and "Patient states now both lower legs are hurting and now claims that freezer door fell on both versus just falling on left leg as described on 9/22/21 visit." Waggoner explained that while the reports did not identify an injury to her knees, she considered her knees to be part of her legs and denied reporting she had lymphedema. Waggoner then stated she returned to work on September 22, 2022, but because she was in a severe amount of pain, she left and did not return.

Records from Dr. Dan Wood, a chiropractor Waggoner sought treatment from on January 11, 2022, were then entered into evidence. The report provided, "History of present condition, mechanism of injury. . . Original injury in September 2021. Refrigerator door at work fell on her legs. She reports that on January 7, 2022, while rolling over in bed, her left knee started hurting and she had to go to the ER for treatment." Waggoner then admitted she sought treatment with Dr. Ballard on July 28, 2022, for bilateral knee pain, and that she was initially diagnosed with degenerative arthritis of the knees and post-traumatic tendinitis. Waggoner acknowledged she last sought treatment with Dr. Ballard on March 26, 2024. While the records indicated Dr. Ballard treated Waggoner for degenerative arthritis of the knees, Waggoner stated that during her last visit, there was no discussion of arthritis, and she was only given a shot for pain.

5

Reports from Dr. Spires were introduced, and Waggoner admitted her height was listed as 5'2'', weight as 273 pounds, and was assessed as having pain in the right and left knee with bilateral osteoarthritis in both knees, and a recommendation for physical therapy was made. Waggoner stated that she has not worked since she left McDonald's, but she has applied for other forms of employment, mainly in office settings or home employment.

Next, Deborah Gilley ("Deborah") testified that she is part of Gilley Enterprises, which owns the McDonald's restaurant where Waggoner was previously employed. In explaining Waggoner's previous claim that a ladder fell on her at work, Deborah stated that the incident occurred in February 2020, but a review of store surveillance showed the ladder did not actually hit Waggoner, and Waggoner subsequently dropped her claim.

In discussing the current injury, Deborah testified she simply gave Waggoner's report to LUBA, her carrier at that time. She stated that at some point, Waggoner returned to work as shift manager and carried out her duties satisfactorily. Deborah stated that on December 8, 2022, Waggoner refused to perform a duty asked of her and quit. On cross-examination, Deborah clarified that December 8, 2022, was the last date Waggoner worked, but her date of termination was listed as December 16, 2022. Deborah testified there was a partial view of the current incident, but from her recollection, it appeared that the door fell and hit the ground. Deborah then clarified that if an employee is injured, she has no authority to decide whether the employee is entitled to benefits.

Counsel for the Appellants clarified Waggoner received indemnity benefits on September 21, 2021, which were paid through February 20, 2022. Counsel explained that benefits were terminated at that time because

Waggoner returned to work on February 22, 2022, and continued working until December 8, 2022, with scaled-back hours at Waggoner's own discretion, and a position change from shift manager to crew member because she only worked five-hour shifts. The WCJ stated that a review of the transcript, and all medical records, would be conducted, with a focus on any pre-existing conditions, and whether Waggoner's description of her knee being considered a part of her leg had any merit.

As part of its post-trial brief, Appellants explained that Waggoner's claim had been accepted as it related to her left leg, and indemnity benefits had been paid through February 20, 2022. Additionally, medical expenses had been paid in the amount of $4,438.45. Appellants again denied that Waggoner injured her knees as a result of the workplace accident, denied Waggoner was either permanently or temporarily disabled, and denied that any injury she sustained resulted in a loss of earning capacity. As such, Appellants argued that Waggoner received all benefits to which she was entitled under the law, as it related to her left leg only.

Another hearing was held on June 12, 2024, wherein the WCJ reiterated that Waggoner was injured on September 20, 2021; the claim was accepted in part and indemnity benefits were paid until February 20, 2022, withholding that Waggoner's knees were not injured while at work, and Waggoner was given a compensation rate of $402.06 per week. After reviewing Waggoner's medical history, the WCJ noted Waggoner was diagnosed with post-traumatic tendinitis and found that there was objective evidence of an injury to her legs and knees.

The WCJ further recognized a finding of lymphedema; however, it highlighted that "jurisprudence has held a pre-existing condition will not bar

an employee from recovery if the employee established that the work-related accident aggravated, accelerated, or combined with his pre-existing condition to cause a disability for which the compensation is claimed." The WCJ then provided:

> There is no evidence of disabling conditions prior to the work accident. Furthermore, objective findings continued throughout Claimant's medical treatment with Dr. Ballard. He released Claimant from work consistently from July 8, 2022, through February 28, 2024. While Defendants contend Dr. Ballard's opinions are based upon an "exaggeration of events" and this Court should afford his opinion little if any probative value, there is no evidence that Dr. Ballard would base his medical findings on subjective complaints only. He is an orthopedic surgeon, and this Court gives great weight to his medical findings. There is not a valid reason not to do so. Dr. Ballard continued to note swelling and posttraumatic tendinitis. Evidence indicates Claimant returned to work on February 22, 2022. She worked through December 8, 2022. She "scaled back" her work hours and worked only five hours per day. While Dr. Ballard released Claimant from work in July of 2022, she continued to work. Her efforts cannot be held against her.
>
> . . .
>
> Jurisprudence has held a Claimant who seeks Worker's Compensation benefits on the basis she is temporarily disabled must prove by clear and convincing evidence, without taking pain in consideration, that she is unable to engage in any employment or self-employment. Thus, Claimant is not entitled to temporary total disability benefits during the period of February 22, 2022, through December 8, 2022, her last date of employment. However, Dr. Ballard released her from work on December 20, 2022. Evidence indicates Claimant was actually terminated from employment around December 8, 2022, due to a dispute with her supervisor concerning assigned job duties. When she returned to Dr. Ballard on December 20, 2022, Dr. Ballard notes, "Patient has not gotten any better." Objective findings were noted. There was localized swelling. The anterior, medial, and lateral aspect were tender on palpation. Thus, this Court finds Claimant is entitled to temporary total disability benefits from December 20, 2022, through February 28, 2024. All other requests are denied. All costs are assessed against Defendants, and this matter is dismissed with prejudice.

The judgment was read into the record and this appeal followed.

8

## DISCUSSION

On appeal, Appellants present two assignments of error for review. First, Appellants argue that the WCJ erred in finding Waggoner met her burden of proof in showing that her bilateral knee injury was a result of the workplace accident. Particularly, Appellants highlight that following the accident, Waggoner reported to Morehouse General, where she claimed that a refrigerator door fell on her leg only, and was subsequently diagnosed with a contusion on her left leg and was released to return to work on September 23, 2021. Appellants further highlight the following events:

- Following the E.R. visit, Waggoner sought additional treatment at Morehouse Community, complaining of pain in her lower left leg; however, during a follow-up visit on September 29, 2021, Waggoner claimed to have pain in both legs.

- After an evaluation with Dr. Brown, Waggoner was given physical therapy and returned to work on February 22, 2022.

- After her first day back at work, Waggoner reported to the emergency room at Morehouse General once more and complained of weakness in her legs due to a refrigerator door falling on her legs.

- On July 28, 2022, Waggoner sought treatment with Dr. Ballard and reported that the refrigerator door fell on both her knees and legs. Waggoner was then diagnosed with degenerative arthritis and posttraumatic tendinitis.

- On December 20, 2022, Waggoner complained of bilateral knee pain and Dr. Ballard took her off work.

Appellants posit that following the workplace accident, Waggoner sought treatment from a number of healthcare providers and presented a false or exaggerated reiteration of her injuries. Although Waggoner claimed that when she told staff at Morehouse Community that her leg was injured, this was meant to include her knees, Appellants assert that Waggoner has made a clear distinction between her knee and leg in describing her

9

symptoms to Dr. Ballard for physical therapy. Specifically, Appellants highlight that when Waggoner saw her physical therapist on January 11, 2022, she stated that a refrigerator door fell on her legs at work and that her left knee began hurting on January 7, 2022.

Appellants assert that Waggoner's medical records from her initial visit to Morehouse General accurately reflect the extent of Waggoner's injuries as she described the incident to staff —i.e., that the refrigerator door hit her lower left leg, and the subsequent contusion presented thereafter. Moreover, Appellants argue Waggoner had a pre-existing condition of lymphedema, which caused swelling in her legs and knees. Because of Waggoner's exaggerated and inconsistent description of her injuries, Appellants argue Waggoner failed to meet her burden of proof to show that her knee injury was related to her workplace accident.

The purpose of the Workers' Compensation Act is to set up a court-administered system to aid injured workmen by relatively informal and flexible proceedings that are to be interpreted liberally in favor of the workmen. *Fobbs v. CompuCom Systems, Inc.*, 55,173 (La. App. 2 Cir. 9/27/23), 371 So. 3d 1146.

An employee is entitled to workers' compensation benefits if she receives personal injury by accident arising out of and in the course of her employment. La. R.S. 23:1031(A); *Woodard v. Brookshire Grocery Co.*, 54,574 (La. App. 2 Cir. 8/10/22), 345 So. 3d 439, *writ denied*, 22-01360 (La. 11/16/22), 349 So. 3d 1001. An employment-related accident is an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual

10

deterioration or progressive degeneration. La. R.S. 23:1021(1); *Woodard*, *supra*.

The claimant has the burden of establishing her disability and its causal connection to the work-related accident by a preponderance of the evidence. *Id.* If the evidence leaves the probabilities evenly balanced, or if it shows only a possibility of a work-related event or leaves it to speculation or conjecture, then the plaintiff fails to carry his burden. *Millage v. Builder's Lumber & Supply Co.*, 38,635 (La. App. 2 Cir. 7/2/04), 877 So. 2d 1171, *writ denied*, 04-1885 (La. 10/29/04), 885 So. 2d 594. As this Court stated in *Jones v. AT&T*, 28,059 (La. App. 2 Cir. 2/28/96), 669 So. 2d 696:

> While the worker's testimony alone may be sufficient to discharge that burden, it will be inadequate where (1) other evidence discredits or casts serious doubt upon the worker's version of the incident; or (2) the worker's testimony is not corroborated by the circumstances following the alleged incident. . . Such corroboration, of course, may include medical evidence and the testimony of fellow workers, spouses, or friends.

The claimant seeking workers' compensation benefits for work-related accidents is not required to prove the exact cause of her disability, but she must demonstrate by a preponderance of the evidence that the accident has a causal connection with it. Disability may be presumed to have resulted from an accident if, before the accident, the claimant was in good health, but commencing with the accident, the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that there is sufficient medical evidence to show a reasonable possibility of a causal relation between the accident and disability, or the nature of the accident, combined with the other facts of the case, raises a natural inference of causation. *Hill v. IASIS Glenwood Reg'l Med.*, 50,531

11

(La. App. 2 Cir. 5/18/16), 195 So. 3d 536, *writ denied*, 16-1357 (La. 11/7/16), 209 So. 3d 104.

Where the claimant suffers from a pre-existing condition, he may still prevail if he proves that the accident aggravated, accelerated, or combined with the disease or infirmity to produce disability for which compensation is claimed. *Fobbs, supra.* In such a situation, the claimant is entitled to compensation for the duration of the aggravation. *Id.* Whether the claimant has carried his burden of proof and whether testimony is credible are questions of fact. *Koenig v. Christus Schumpert Health Sys.*, 44,244 (La. App. 2 Cir. 5/13/09), 12 So. 3d 1037.

Factual findings in a workers' compensation case are subject to the manifest error or clearly wrong standard of appellate review. *Id.* In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993). Under the manifest error rule, the reviewing court does not decide whether the WCJ was right or wrong, but only whether its findings are reasonable. *Elmuflihi v. Central Oil & Supply Corp.*, 51,673 (La. App. 2 Cir. 11/1/17), 245 So. 3d 155, *writ denied*, 17-2009 (La. 2/23/18), 237 So. 3d 1189. The reviewing court is not permitted to reweigh the evidence or reach its own factual conclusions from the evidence. *Id.* The manifest error standard applies even when the WCJ's decision is based on written reports, records, or depositions. *Woodard*, *supra*.

In the present case, there is no dispute that Waggoner sustained an injury arising out of the course and scope of her employment. The only

question is whether Waggoner's claim of bilateral knee pain was a result of the accident. In interpreting the provisions of the workers' compensation law liberally in Waggoner's favor, while extending great deference to the WCJ's findings of fact, we agree that Waggoner's claim that her injury to her left leg could have also encompassed her knee, that this injury was compensable, and stemmed from her workplace accident. However, after a thorough examination of the record, we are constrained to find that there was insufficient evidence to support the WCJ's ruling insofar as it relates to Waggoner's claim that her injury to her right leg and knee arose from the workplace accident.

In its reasons for judgment, the WCJ found that since September 29, 2021, Waggoner consistently complained of pain in both legs and knees, and there was objective evidence of an injury to these areas. However, a review of the record shows that neither did Waggoner consistently report pain in both her legs and knees, nor did treatment for her reported pain reflect that both legs and knees were injured because of the accident.

Notably, medical records from Morehouse General reflected that on September 21, 2021, Waggoner claimed a refrigerator door fell on her lower *left* leg, that she only complained of pain in her *left* shin, and that she denied having any other injuries. Staff noted Waggoner had a bruise on her lower *left* leg, there was prominent swelling about the *left* knee and calf, and she was then diagnosed with a contusion on her *left* leg. On September 21, 2021, Waggoner went to Morehouse Community where she again reported that her lower *left* leg was in pain after a door fell on it. A week later, on September 29, 2021, Waggoner returned to Morehouse Community, where she, for the first time, reported that both of her legs were injured at work.

13

Despite this change in her report, medical records from October 19, 2021, nevertheless indicated that Waggoner suffered from pain and swelling in her *left* knee and that her lower *left* leg was sensitive to the touch, but her right knee had full range of motion. Likewise, another visit to Morehouse General on January 9, 2022, reflected that Waggoner again reported she hurt her *left* leg in a workplace accident; no mention of Waggoner's right leg, let alone her right knee, was reported. Moreover, physical therapy notes from Dr. Wood consistently reported that Waggoner received treatment for her *left* side and *left* knee where the pain was localized.

Although the trial court afforded great weight to Dr. Ballard's findings, we note that Waggoner did not seek treatment with him until ten months after the accident on July 28, 2022. Moreover, despite Waggoner's claim that she experienced bilateral knee pain and Dr. Ballard finding swelling in both knees, he only diagnosed Waggoner with degenerative arthritis in both knees, synovitis of the knee, and post-traumatic tendinitis, without noting if the tendinitis was localized to one or both knees or if the synovitis was localized to the left or right knee. Moreover, in treating Waggoner, Dr. Ballard prescribed injections for pain; however, we highlight that on three different appointments, Dr. Ballard only provided these injections for one knee and noted on one occasion that the injection was given for Waggoner's left knee only.

Importantly, we also note that Waggoner admitted she had a history of lymphedema (which as noted by the record, causes swelling), joint pain, and as she reported to staff at Morehouse General, her blood pressure medication caused swelling. At no point did Dr. Ballard relay that Waggoner's arthritis

14

of her right knee or pain in her right leg was due to or even exacerbated by the workplace accident or was due to Waggoner's pre-existing condition.

Our finding of manifest error in regard to Waggoner's right leg is compelled by the totality of Waggoner's medical history since the date of the accident, and not just the findings of one physician. Waggoner did not consistently report she hurt both her legs and knees; instead, she reported that her *left* leg alone was injured, and there were objective findings that supported this claim, i.e., the contusion on Waggoner's left leg, and the swelling noted on the left knee. Although Waggoner later changed her claim that the refrigerator door fell and hit both her knees and landed on her legs, the medical records in this case indicate that her right knee was examined, but had full range of motion, and all treatment was localized for her left leg and knee, of which Waggoner originally reported pain.

Given Waggoner's previous medical history of lymphedema, her own report that her blood pressure medication caused swelling, as well as her joint pain, we cannot say that Waggoner satisfied her burden of proof or that there was sufficient evidence to reasonably conclude Waggoner's pain in her right leg or knee was caused by or exacerbated by the workplace accident when Dr. Ballard's treatments primarily focused on Waggoner's left knee.

Therefore, we find that the WCJ's ruling, insofar as it relates to Waggoner's injury to her right leg, is without merit, and the ruling is reversed as it relates to Waggoner's injury to her right leg.

By their second assignment of error, Appellants argue that the WCJ erred in awarding Waggoner continuing indemnity benefits, from December 20, 2022, until February 28, 2024. Appellants highlight that they approved Waggoner to receive indemnity benefits from the date of the accident until

15

February 22, 2022, when she returned to work. Appellants maintain that from the moment Waggoner returned to work, regardless of the number of hours she worked, she was no longer entitled to any additional benefits.

Benefits for temporary total disability benefits ("TTD"), are based on "temporary total disability of an employee to engage in any self-employment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience[.]" La. R.S. 23:1221(1)(a). TTD may not be awarded if the claimant can engage in odd-lot employment, sheltered employment, or employment while working in any pain. La. R.S. 23:1221(1)(b). Further, La. R.S. 23:1221(1)(c) provides:

> [W]henever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

In awarding Waggoner additional benefits for TTD, the WCJ provided:

> . . . Claimant is not entitled to temporary total disability benefits during the period of February 22, 2022, through December 8, 2022, her last date of employment. However, Dr. Ballard released her from work on December 20, 2022. Evidence indicates Claimant was actually terminated from employment around December 8, 2022, due to a dispute with her supervisor concerning assigned job duties. When she returned to Dr. Ballard on December 20, 2022, Dr. Ballard notes, "Patient has

16

> not gotten any better." Objective findings were noted. There was localized swelling. The anterior, medial, and lateral aspect were tender on palpation. Thus, this Court finds Claimant is entitled to temporary total disability benefits from December 20, 2022, through February 28, 2024. All other requests are denied. All costs are assessed against Defendants, and this matter is dismissed with prejudice.

As the WCJ correctly noted, Waggoner was not entitled to TTD benefits when she returned to work on February 22, 2022, through December 8, 2022, when she was terminated. Waggoner was not only released back to work at full capacity during this time, but she also demonstrated that regardless of her pain, she could still engage in some form of physical work, even though she voluntarily scaled back her work hours.

However, we find that the WCJ erred in awarding benefits from December 20, 2022, when Dr. Ballard released Waggoner from work, until February 28, 2024. We note that during several visits after Waggoner was released from work, and was terminated from her position, she continued to report that walking and standing at work worsened her symptoms.

According to the record in this case, Waggoner was unemployed since her termination on December 8, 2022. Additionally, while Dr. Ballard released Waggoner from work, he did not provide that Waggoner's pain was so debilitating she was incapable of ever returning to or engaging in any form of employment or self-employment such that she would be entitled to TTD during this time.

**CONCLUSION**

For the reasons expressed, the judgment is affirmed as it relates to Waggoner's left leg, reversed as it relates to Waggoner's claim for compensation benefits for her right leg and knee. Further, the portion of the judgment awarding Waggoner benefits from December 20, 2022, until February 28, 2024, is reversed. All other findings not reversed are affirmed. Costs of this appeal are assessed to both parties.

**AFFIRMED IN PART; REVERSED IN PART.**